UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
SALEH DAWLAH HAMID and GHANIA
OBAID,

                              Plaintiffs,

    - against -

UR M. JADDOU, in her official capacity as
Director of U.S. Citizenship and Immigration
Services, *et al.*,

                              Defendants.
---------------------------------------------------------------x

**OPINION & ORDER**

No. 23-CV-9538 (CS)

Appearances:

Julie A. Goldberg
Goldberg & Associates
Bronx, New York
*Counsel for Plaintiffs*

Courtney E. Moran
Special Assistant United States Attorney
New York, New York
*Counsel for Defendants*

Seibel, J.

    Before the Court is Defendants' motion to dismiss. (ECF No. 29.) For the following reasons, Defendants' motion is GRANTED.

**I.    BACKGROUND**

    For purposes of the motion to dismiss for failure to state a claim upon which relief can be granted, the Court accepts as true the facts, but not the conclusions, alleged by Plaintiffs in their First Amended Complaint. (*See* ECF No. 26 ("FAC").)

A.     **Facts**

The Immigration and Nationality Act ("INA") provides that the English language and civics requirements for naturalization "shall not apply to any person who is unable because of physical or developmental disability or mental impairment to comply therewith." 8 U.S.C. § 1423(b)(1). Applicants for naturalization can therefore seek a disability exception from those requirements by submitting a Form N-648, which must be completed by a licensed medical or osteopathic doctor or licensed clinical psychologist who is experienced in diagnosing those with physical or mental impairments and who can "attest to the origin, nature, and extent of the medical condition as it relates to the disability exceptions." 8 C.F.R. § 312.2(b)(2).

Plaintiffs Saleh Dawlah Hamid and Ghania Obaid are lawful permanent residents. (FAC ¶¶ 24, 44.) On April 7, 2023, and June 7, 2023, respectively, Hamid and Obaid filed an N-400 Application for Naturalization, along with an N-648 Medical Certification for Disability Exceptions. (*Id.* ¶¶ 25, 45.)

On August 18, 2023, Hamid and her counsel attended her N-400 interview at the New York City Field Office. (*Id.* ¶ 26.) The Immigration Service Officer, Defendant L. Rutherford, conducted the interview and refused to accept Hamid's Form N-648, stating that it was insufficient and she did not agree with the doctor's determination. (*Id.* ¶¶ 27-29.) Hamid's counsel objected to Rutherford's statement on the basis that it violated the U.S. Citizenship and Immigration Services ("USCIS") Policy Manual, which provides that an officer reviewing the N-648 request for medical disability exception should not "'[a]ttempt to determine the validity of the medical diagnosis or second guess why this diagnosis precludes the applicant from complying with the English requirement, civics requirement, or both requirements.'" (*Id.* ¶ 31 (quoting 12 USCIS-PM E.3(F).) After consulting with an unnamed supervisor, Rutherford

2

informed counsel that the supervisor agreed that the form was insufficient, and proceeded with the civics test examination, which Hamid failed. (*Id.* ¶¶ 32-33.) At the end of the interview, Rutherford issued a Notice of Continuance describing the deficiencies in the Form N-648. (*Id.* ¶¶ 34-35; ECF No. 1-2 at 11-13.)[1] Plaintiff alleges that the listed reasons were false, as the form included all of the information that the officer alleged was missing, including the most recent DSM or ICD Code, an attestation that the impairment is expected to last 12 months or more, the medical professional information, the date of the last examination of the impairment, and the clinical methods or diagnostic techniques used to diagnose the impairments. (*See* FAC ¶¶ 36-42.) The notice stated that Hamid would be scheduled for another interview and given a second chance to pass the test or submit a new or updated Form N-648 with additional information. (ECF No. 1-2 at 13.) On January 31, 2024 – after the original Complaint in this case was filed – the USCIS denied Hamid's application for naturalization, listing the deficiencies in her Form N-648 and noting that she failed to appear on January 29, 2024 for a second interview and opportunity to retake the test, and rejecting the position set forth in a letter from her attorney contending that because the instant action had been instituted, USCIS no longer had jurisdiction over the application. (*See* FAC ¶ 43; ECF No. 29-1 at 3-5.)[2]

---

[1] The FAC refers to numerous exhibits that are not attached but were attached to the original Complaint. It is apparent that counsel intended them to be attached to the FAC, and in any event they are incorporated in and integral to the FAC, *see United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (court in deciding motion to dismiss may consider documents attached to, incorporated in or integral to complaint), so I consider them in connection with this motion. (Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.) Citations to ECF No. 1-2 use the page numbers generated by the Court's Electronic Case Filing ("ECF") System.

[2] ECF Nos. 29-1 and 29-2 were not attached to the original Complaint, as they did not yet exist, but the FAC refers to and incorporates them. (See FAC ¶¶ 43, 61.) Further, they are government documents of which the Court may take judicial notice. *See Vetcher v. Immigr. Customs Enf't Agents Grp. 1*, No. 18-CV-6798, 2023 WL 6879594, at *1 & n.2 (E.D.N.Y. Oct.

On October 3, 3023, Obaid and her counsel attended her N-400 interview conducted by Defendant Immigration Service Officer Marie Vilbrun, who rejected Obaid's Form N-648, stating that it was insufficient because she did not agree with the doctor's determination. (FAC ¶¶ 46-47.) Officer Vilbrun stated to counsel that she did not understand how Obaid's condition affected her ability to learn English and/or civics as the condition is common. (*Id.* ¶ 48.) Counsel objected to the statement as violating the USCIS Policy Manual's provision that officers should not attempt to second guess diagnoses. (*Id.* ¶ 50 (citing 12 USCIS-PM E.3(F).) Officer Vilbrun consulted with her supervisor, Defendant Senior Immigration Service Officer Terri Williams, who agreed that the Form N-648 was insufficient. (*Id.* ¶ 51.) Vilbrun concluded the interview and provided Obaid and her counsel a form that indicated that a decision could not be made yet and that Obaid would receive a written decision and another testing opportunity. (*Id.* ¶ 52; *see* ECF No. 1-2 at 28.) On the same day, USCIS scheduled Obaid for a second interview on December 18, 2023, and on October 5, 2023, USCIS issued a Notice of Continuance listing the insufficiencies with the Form N-648 and requesting that Obaid submit a new one by November 7, 2023. (FAC ¶¶ 53-55; ECF No. 1-2 at 30-31.) Obaid alleges that the listed deficiencies were false, as her Form N-648 included the complete clinical diagnosis, an explanation of how the impairments affected her ability to understand English and/or civics, a description of the medical impairments, and the clinical methods used to diagnose them. (FAC ¶¶ 56-60.) The notice stated that Obaid would be scheduled for another interview and given a second chance to pass the test or submit a new or updated Form N-648 with additional information. (ECF No. 1-2 at 31.) On December 23, 2023, the USCIS denied Obaid's

---

18, 2023). Citations to ECF Nos. 29-1 and 29-2 use the page numbers generated by the Court's ECF System.

application for naturalization, listing the deficiencies in her Form N-648 and noting that she failed to submit a new form or appear for the second interview, and rejecting the position set forth in a letter from her attorney contending that because the instant action had been instituted, USCIS no longer had jurisdiction over the application.  (*See* FAC ¶ 61; ECF No. 29-2 at 3-5.)

### B.    Procedural History

Plaintiffs filed their complaint on October 31, 2023.  (ECF No. 1.)  On February 5, 2024, Defendants filed a pre-motion letter in anticipation of a motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1).  (ECF No. 10.)  At the pre-motion conference on March 5, 2024, I set a briefing schedule.  (*See* Minute Entry dated Mar. 5, 2024.)  On May 9, 2024, Defendants submitted a letter informing the Court that they intend to move to dismiss under both FRCP 12(b)(1) and 12(b)(6).  (ECF No. 20.)  The Court granted Plaintiffs leave to amend the complaint in light of Defendants' position.  (ECF No. 21.)  Plaintiffs filed their FAC on July 8, 2024, asserting a violation of the Administrative Procedure Act and seeking *de novo* review of their Forms N-648 pursuant to 8 U.S.C. § 1421(c).  (ECF No. 26.)  The instant motion followed.  (*See* ECF No. 29.)

## II.   LEGAL STANDARDS

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint."  *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on other grounds on reh'g en banc*, 585 F.3d 559 (2d Cir. 2009).  "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Id*.  "When jurisdiction

is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination." *Id.* "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 561 U.S. 247 (2010).

When a defendant moves to dismiss both for lack of subject matter jurisdiction and on other grounds such as failure to state a claim upon which relief can be granted, the Court must address the issue of subject matter jurisdiction first. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990). If a controversy is moot, the Court lacks subject matter jurisdiction over it. *Fox v. Bd. of Trs. of State Univ. of N.Y.* 42 F.3d 135, 140 (2d Cir. 1994).

### B. Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While Federal Rule of Civil Procedure 8 "marks a

notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

### III.   DISCUSSION

#### A.   Subject Matter Jurisdiction

In their opening brief, Defendants argue that to the extent Plaintiffs seek an order compelling adjudication of their naturalization applications, their claims are moot because the USCIS denied the applications, and therefore the Court lacks subject matter jurisdiction. (ECF No. 30 ("Ds' Mem.") at 9-10.) Plaintiffs do not contend otherwise, perhaps because their request that USCIS be compelled to adjudicate their applications appears only in their original Complaint, to which the Government inexplicably cites in its brief, (*see* ECF No. 1 at 2-3), not in the FAC. I agree with the parties that such a request, if it were made, would be moot. But Plaintiffs contend, and the Government does not dispute, that their challenge to the rejection of

7

their Forms N-648 is not moot, (*see* ECF No. 31 ("Ps' Opp") at 7-8; ECF No. 32 ("Ds' Reply") at 1-2), so I turn to that issue.

      **B.**      <u>**Exhaustion of Administrative Remedies**</u>

Defendants argue that Plaintiffs' claims must be dismissed because they failed to exhaust administrative remedies. (*See* Ds' Mem. at 10-12; Ds' Reply at 2-4.) The INA provides that "[a] person whose application for naturalization under this subchapter is denied, *after a hearing before an immigration officer* under section 1447(a) of this title, may seek review of such denial before the United States district court . . . ." 8 U.S.C. § 1421(c) (emphasis added).[3] "The Second Circuit has determined that the INA requires the exhaustion of administrative remedies before an applicant may seek judicial review of his or her naturalization application." *Saleh v. Pastore*, No. 19-CV-11799, 2021 WL 1640449, at *9 (S.D.N.Y. Apr. 27, 2021) (citing *Escaler v. U.S. Citizenship & Immigr. Servs.*, 582 F.3d 288, 292 (2d Cir. 2009)), *aff'd*, No. 21-1073, 2021 WL 4978574 (2d Cir. Oct. 27, 2021); *see Moya v. United States Dep't of Homeland Sec.*, 975 F.3d 120, 124 (2d Cir. 2020) (district court properly dismissed plaintiffs' claim because plaintiffs did not exhaust their administrative remedies). Although § 1421(c)'s exhaustion requirement is not jurisdictional, it sets forth "a mandatory claim-processing rule" that "courts are not free to dispense with." *Donnelly v. Controlled Application Rev. and Resol. Program Unit*, 37 F.4th 44, 54-55 (2d Cir. 2022); *see Moya*, 975 F.3d at 127 ("Section 1421(c)'s exhaustion requirement is mandatory, and the Individual Plaintiffs may not sue until they have satisfied it."). Plaintiffs are not exempt from the INA's exhaustion requirement even when they seek to challenge not just the denials of their individual naturalization applications but the N-648 waiver process generally.

---

      [3] Section 1447(a) provides that if, after an examination under 8 U.S.C. § 1446, a naturalization application is denied, the applicant may request a hearing before an immigration officer. 8 U.S.C. § 1447(a).

*Moya*, 975 F.3d at 126.  Where a plaintiff does not comply with the exhaustion requirement, she has failed to state a claim.  *Donnelly*, 37 F.4th at 47 ("Because the government properly raised [plaintiff's] failure to attend the hearing as a failure to exhaust, § 1421(c)'s exhaustion requirement must be enforced.  [Plaintiff's] noncompliance with the exhaustion requirement means that he failed to state a claim, and we affirm the judgment of the district court on that ground.").

Here, Plaintiffs do not dispute that they failed to exhaust their administrative remedies.  Instead, they argue that they are not required to exhaust administrative remedies because doing so would be futile.  (*See* Ps' Opp. at 8-11.)  Plaintiffs cite *Shweika v. Dep't of Homeland Sec.*, 723 F.3d 710 (6th Cir. 2013), in support of their futility argument.  (*Id.* at 8.)  But, as Defendants note in their reply brief, (Ds' Reply at 4 n.3), while *Shweika* holds that § 1421(c)'s exhaustion requirement is not jurisdictional, it does not hold that the requirement may be excused for futility.  *See Shweika*, 723 F.3d at 719-20 ("Notwithstanding our conclusion that 8 U.S.C. § 1421(c)'s administrative-hearing requirement is nonjurisdictional, it does not follow that Shweika was thereby free to disregard the requirement, if in fact he did so.").  Indeed, the Second Circuit in *Donnelly* made clear that even though § 1421(c) is a claim-processing rule rather than a jurisdictional requirement, a court cannot read a futility or other extra-statutory exception into it.  *See* 37 F.4th at 56 ("§ 1421(c) is a statutory exhaustion requirement, and we may not create exceptions to it.").[4]

Second, while Plaintiffs acknowledge the holdings in *Moya v. United States Dep't of Homeland Security*, 975 F.3d 120 (2d Cir. 2020), and *De Dandrade v. United States Dep't of*

---

[4] Although not necessary to my decision, it is not clear to me that just because the line interviewers and their supervisors allegedly misapplied the USCIS policy manual, the officers to whom Plaintiffs would have appealed necessarily would have done the same.

9

*Homeland Security*, 367 F. Supp. 3d 174 (S.D.N.Y. 2019), that challenges to the denial of Forms N-648 cannot be brought before the district court unless plaintiffs exhaust their administrative remedies, they nevertheless argue that neither case addressed whether exhaustion could be waived or whether exhaustion was made mandatory by statute or by the USCIS' regulations. (Ps' Opp. at 9-10.)  But that these cases did not address whether exhaustion could be waived – and indeed it can be, *see Donnelly*, 37 F.4th at 56 – does not change their holdings that exhaustion is mandatory, and here the Government has not waived it.  Plaintiffs' argument that the requirement was not promulgated by Congress, (Ps' Opp. at 9-10), fails in light of § 1421(c)'s plain language that a person whose naturalization application is denied may seek review "after a hearing before an immigration officer,"  8 U.S.C. § 1421(c).  "Section 1421(c)'s exhaustion requirement is statutory, and therefore it is mandatory." *Donnelly*, 37 F.4th at 56.

The Court acknowledges Plaintiffs' arguments that in reviewing their Forms N-648, Defendants may have violated their own policies.  But Plaintiffs have failed to state a claim upon which relief can be granted because they have not exhausted their administrative remedies as required.  Accordingly, Plaintiffs' claims must be dismissed.  *See Moya*, 975 F.3d at 124 ("Because [Plaintiffs] did not exhaust their administrative remedies [pursuant to 8 U.S.C. § 1421(c)], the district court properly dismissed their claims.").  Even though it is highly unlikely that the agency would reopen Plaintiffs' naturalization proceedings and given them another opportunity to exhaust, I dismiss without prejudice in an excess of caution.  *See Donnelly*, 37 F.4th at 57 ("In the context of administrative exhaustion . . . dismissal without prejudice is frequently appropriate because a failure to exhaust administrative remedies is often a temporary, curable procedural flaw.").

10

C.      **Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs already amended their complaint, after having the benefit of Defendants' pre-motion letter, (ECF No. 10), and the discussion at the March 5, 2024 pre-motion conference, (*see* Minute Entry dated Mar. 5, 2024). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."); *see also Baines v. Nature's Bounty (NY), Inc.*, No. 23-CV-710, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) (no abuse of discretion where plaintiffs "already amended their complaint once in the face of a pre-motion letter from Defendants," and then "requested leave to amend again in a single, boilerplate sentence without specifying what allegations they could add or how amendment would cure any deficiencies"); *Bardwil Indus. Inc. v. Kennedy*, No. 19-CV-8211, 2020 WL 2748248, at *4 (S.D.N.Y. May 27, 2020) (dismissing with prejudice where plaintiff amended following

11

pre-motion letters and pre-motion conference that identified the deficiencies resulting in dismissal).

Moreover, Plaintiffs have not asked to amend again or otherwise suggested that they are currently in possession of facts that would cure the deficiencies identified in this decision. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if [she] fails to specify . . . how amendment would cure the pleading deficiencies in [the] complaint."); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice "in the absence of any indication that [plaintiff] could—or would—provide additional allegations that might lead to a different result . . . ."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend); *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321, 2023 WL 2051739, at *21 (S.D.N.Y. Feb. 16, 2023) (denying leave to amend where plaintiff "already amended its complaint in response to [Defendant's] pre-motion letter detailing the bases for its anticipated motion to dismiss" and did not seek leave to amend again). Indeed, "[t]he problem with [plaintiff's] causes of action is substantive; better pleading will not cure it." *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 29), and close the case.

**SO ORDERED.**

Dated: November 8, 2024
      White Plains, New York

                                                                          CATHY SEIBEL, U.S.D.J.